UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BUILDING AND REALTY INSTITUTE
OF WESTCHESTER AND PUTNAM
COUNTIES, INC., *et al.*,

                              Plaintiffs,

              v.

STATE OF NEW YORK, *et al.*,

                              Defendants.

---

G-MAX MANAGEMENT, INC., *et al.*,

                              Plaintiffs,

              v.

STATE OF NEW YORK, *et al.*,

                              Defendants.

---

No. 19-CV-11285 (KMK)

No. 20-CV-634 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances</u>:

Kenneth J. Finger, Esq.
Finger & Finger, A Professional Corporation
White Plains, NY
*Counsel for Plaintiffs Building and Realty Institute of Westchester and Putnam Counties, Inc.;
Apartment Owners Advisory Council; Cooperative and Condominium Council; Stepping Stones
Associates, L.P.; Lisa DeRosa as Principal of Stepping Stones, L.P.; Jefferson House Associates,
L.P.; Shub Karman, Inc.; DiLaRe, Inc.; Property Management Associates; Nilsen Management
Co., Inc.*

Randy M. Mastro, Esq.
William J. Moccia, Esq.
Akiva Shapiro, Esq.
Gibson, Dunn & Crutcher, LLP
New York, NY
*Counsel for Plaintiffs G-Max Management, Inc.; 1139 Longfellow, LLC; Green Valley Realty,
LLC; 66 East 190 LLC; 4250 Van Cortlandt Park East Associates, LLC; 181 W. Tremont
Associates, LLC; 2114 Haviland Associates, LLC; Siljay Holding LLC; 125 Holding LLC; Jane
Ordway; Dexter Guerrieri; Brooklyn 637-240 LLC; 447-9 16th LLC*

Michael A. Berg, Esq.
Shi-Shi Wang, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants State of New York; Ruthanne Visnauskas in her official capacity as Commissioner of New York State Division of Housing and Community Renewal; Division of Homes and Community Renewal; Letitia James in her official capacity as Attorney General of the State of New York; Woody Pascal in his official capacity as Deputy Commissioner of the New York State Division of Housing and Community Renewal*

Rachel K. Moston, Esq.
Claudia Brodsky, Esq.
New York City Law Department
New York, NY
*Counsel for Defendant City of New York*

Caitlin J. Halligan, Esq.
Sean Patrick Baldwin, Esq.
Michael Duke, Esq.
Thaddeus C. Eagles, Esq.
Babak Ghafarzade, Esq.
Selendy & Gay, PLLC
New York, NY
*Counsel for Proposed Intervenors Community Voices Heard and N.Y. Tenants & Neighbors*

Ellen B. Davidson, Esq.
The Legal Aid Society
New York, NY
*Counsel for Proposed Intervenors Community Voices Heard and N.Y. Tenants & Neighbors*

KENNETH M. KARAS, United States District Judge:

On December 10, 2019, a group of 10 Plaintiffs who are landlords and organizations in Westchester County, New York filed a Complaint against the State of New York, Ruthanne Visnauskas in her official capacity as Commissioner of the New York State Division of Housing and Community Renewal ("Visnauskas"), and the Division of Homes and Community Renewal ("DHCR"; collectively, the "BRI Defendants"), alleging that recent amendments to the Emergency Tenant Protection Act of 1974 (the "ETPA") are violative of their constitutional

rights (the "BRI Action").  (*See* BRI Compl. (Dkt. No. 1, Case No. 19-CV-11285).)[1]  Proposed Intervenor Community Voices Heard ("CVH"), a tenant advocacy group, seeks to intervene as a Defendant in the BRI Action.[2]

Similarly, on January 23, 2020, a group of 13 Plaintiffs who are "small landlord owners" (the "G-Max Plaintiffs") filed a Complaint against the State of New York, Visnauskas, Letitia James in her official capacity as Attorney General of New York ("James"), Woody Pascal in his official capacity as Deputy Commissioner of the New York State Division of Housing and Community Renewal ("Pascal"), and New York City (collectively, the "G-Max Defendants"), alleging violations of the Fifth and Fourteenth Amendments; the Contracts Clause, U.S. Const. art. I, § X, cl. 1; the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.*; and various provisions of the New York State Constitution (the "G-Max Action").  (*See* G-Max Compl. (Dkt. No. 1, Case No. 20-CV-634).)[3]  Proposed Intervenors CVH and New York Tenants & Neighbors ("T&N"; with CVH, the "Proposed Intervenors"), also a tenant advocacy group, seek to intervene as Defendants in the G-Max Action.

---

[1] BRI Plaintiffs are: Building and Realty Institute of Westchester and Putnam Counties, Inc.; Apartment Owners Advisory Council; Cooperative and Condominium Council; Stepping Stones Associates, L.P.; Lisa DeRosa as Principal of Stepping Stones, L.P.; Jefferson House Associates, L.P.; Shub Karman, Inc.; DiLaRe, Inc.; Property Management Associates; and Nilsen Management Co., Inc.

[2] An additional Party, 300 Apartment Associates, Inc., seeks to intervene as a Plaintiff in the BRI Action.  (*See* Not. of Mot. To Add Party 300 Apartment Associates, Inc. (Dkt. No. 46, Case No. 19-CV-11285).)  The Court addresses this Motion To Intervene in a separate Opinion & Order.

[3] G-Max Plaintiffs are: G-Max Management, Inc.; 1139 Longfellow, LLC; Green Valley Realty, LLC; 66 East 190 LLC; 4250 Van Cortlandt Park East Associates, LLC; 181 W. Tremont Associates, LLC; 2114 Haviland Associates, LLC; Siljay Holding LLC; 125 Holding LLC; Jane Ordway; Dexter Guerrieri; Brooklyn 637-240 LLC; and 447-9 16th LLC.

Before the Court is the Motion To Intervene by CVH and T&N in the G-Max Action (the "G-Max Motion") and the Motion To Intervene by CVH in the BRI Action (the "BRI Motion"; collectively, the "Motions").  (*See* Not. of Mot. (Dkt. No. 39, Case No. 19-CV-11285); Not. of Mot. (Dkt. No. 58, Case No. 20-CV-634).)  For the reasons discussed below, the Motions are granted.

## I.  Background

Although the Court assumes the Parties' general familiarity with the factual and procedural background, the Court will briefly summarize the facts most salient to the Motions.

### A.  Factual Background

The following facts are taken largely from CVH and T&N's non-conclusory allegations, which are accepted as true for purposes of the instant Motions.  *See Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016) ("While accepting as true the non-conclusory allegations of the motion, courts applying Rule 24 must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases." (citation, alteration, and quotation marks omitted)); *see also Herman v. N.Y. Metro Area Postal Union*, No. 97-CV-6839, 1998 WL 214787, at *1 (S.D.N.Y. Apr. 30, 1998) ("The applicants' well pleaded allegations must be accepted as true for purposes of considering a motion to intervene, with no determination made as to the merits of the issues in dispute." (citation omitted)).

In 1969, New York City enacted the Rent Stabilization Law of 1969 "as a means to control a perceived penchant toward unreasonably high rent increases on the part of landlords." (CVH and T&N Mem. of Law in Supp. of G-Max Mot. ("CVH G-Max Mem.") 3 (quotation marks omitted) (quoting *Gramercy Spire Tenants' Ass'n v. Harris*, 446 F. Supp. 814, 825 (S.D.N.Y. 1977) (Dkt. No. 60, Case No. 20-CV-634).)  Five years later, the Emergency Tenant

4

Protection Act of 1974 (the "ETPA") extended rent stabilization "to any Westchester, Rockland, or Nassau County municipality with a rental vacancy rate of five percent or less that opted in." (*Id.* (citation omitted).)  Under the ETPA, a Rent Guidelines Board for New York City and the relevant counties established maximum annual rent increases for units that were regulated.  (*Id.*)  Since the Rent Stabilization Law of 1969 was enacted, the rent stabilization laws and regulations (collectively, the "RSL") have been renewed and modified several times.  (*Id.*)

In 2019, New York State enacted the Housing Stability and Tenant Protection Act of 2019 (the "HSTPA") to address trends that included, according to CVH and T&N, low rental vacancy rates, households spending large percentages of their incomes on rent, a large number of tenants in danger of eviction, and increases in rents of rent-stabilized units.  (*Id.* at 3–4.)  The HSTPA allows municipalities throughout New York to "opt in to rent stabilization" and also "strengthened affordable-housing protections under the RSL."  (*Id.* at 4.)  For example, according to CVH and T&N, the HSTPA "modif[ied] or eliminat[ed] provisions in the RSL that provided perverse incentives for landlords to seek eviction of their tenants and fraudulently raise rents," by, for example, allowing landlords to "raise rents based on uncapped and unsupervised individual apartment upgrades."  (*Id.* at 4–5.)  The HSTPA caps such rental increases.  (*Id.* at 5.)  Additionally, prior to the HSTPA, landlords could raise rents by approximately 20 percent when vacancies occurred, which has now been repealed.  (*Id.*)  The HSTPA also requires all rent increases to be keyed off of the current rent, which prevents landlords who charge less than the maximum regulated rent from increasing the rent up to that maximum upon lease renewal.  (*Id.*)

The Proposed Intervenors are both "prominent tenant advocacy groups" that have spent "years" organizing and lobbying for both tenants in general and rent-regulated tenants.  (*Id.* (record citations omitted).)  According to the Proposed Intervenors, their "numerous members"

5

include those who are tenants in rent-stabilized homes in New York City and Westchester, and who have had "first-hand experience with the problems the HSTPA addressed" and "rely on the RSL to continue living in their homes and contributing to their communities." (*Id.* at 6 (record citations omitted).)  Both Proposed Intervenors were on the steering committee of the Upstate Downstate Housing Alliance, which led lobbying efforts for the protections that were ultimately encapsulated in the HSTPA. (*Id.* at 5.)

T&N was founded in 1974 and represents over 2,000 tenant members, approximately 80 percent of whom are "rent-regulated tenants and tenants' associations." (Decl. of Yolanda Cadore in Supp. of G-Max Mot. ("Cadore Decl.") ¶¶ 3, 6 (Dkt. No. 59-1, Case No. 20-CV-634).) T&N has been involved with "every rent law campaign" since December 1974 and was specifically involved in lobbying for the HSTPA. (*Id.* ¶¶ 10, 18–21.)  For example, T&N's former executive director testified at a New York State Senate Housing Committee Hearing in May 2019 and met with members of Governor Cuomo's office to discuss proposals to amend the rent stabilization laws. (*Id.* ¶¶ 20–21.)  T&N also made "multiple trips . . . to Albany" with its members, including tenants, and watched the HSTPA pass the Senate and Assembly in Albany on June 14, 2019. (*Id.*)

CVH was founded in 1994 and its members are principally "women of color and low-income families in New York State." (Decl. of Afua Atta-Mensah in Supp. of CVH and T&N Mot. To Intervene ("Atta-Mensah Decl.") ¶ 2 (Dkt. No. 59-2, Case No. 20-CV-634).)  CVH works with "rent-regulated tenants . . . centered in East Harlem, Westchester County[,] and the Hudson Valley," to, for example, aid them in developing tenant associations and unions. (*Id.* ¶ 4.)  The group represents that it has worked to strengthen rent stabilization laws since 2008, (*id.* ¶ 5), and in 2019, took part in various initiatives and lobbying efforts to reform these laws, (*id.*

¶ 17).  Like T&N, members of CVH testified at two New York State Senate Housing Committee Hearings related to rent regulation in May 2019 and also traveled to Albany to watch the passage of the HSTPA on June 14, 2019.  (*Id.* ¶¶ 18–19.)  Relatedly, in 2018, CVH was the "driving force" that led the Village of Ossining to opt into rent stabilization, and is currently working with Newburgh to do the same.  (CVH G-Max Mem. 5–6.)

The G-Max Plaintiffs are "small landlord owners" who "own[] one or more multifamily residential buildings in New York."  (G-Max Compl. ¶¶ 6, 21.)  These Plaintiffs allege that the HSTPA "violate[s] the Takings, Due Process, and Equal Protection Clauses of the U.S. and New York State Constitutions, and the Contracts Clause of the U.S. Constitution, both facially and as applied."  (G-Max Pls.' Mem. of Law in Opp'n to Mot. ("G-Max Pls.' Mem.") 1 (Dkt. No. 61, Case No. 20-CV-634).)  The G-Max Plaintiffs also allege that the HSTPA violates the FHA due to its disparate impacts.  (*Id.*)  In the G-Max Action, the New York State Office of the Attorney General (the "NYAG") represents the State of New York, Visnauskas, and Pascal.  (*See generally* Dkt., Case No. 20-CV-634.)  The New York City Law Department represents the City of New York.  (*See generally id.*)  Similarly, the BRI Plaintiffs are "organizations and landlords in Westchester County."  (BRI Pls.' Mem. of Law in Opp'n to Mot. To Intervene ("BRI Pls.' Mem.") 1 (Dkt. No. 44, Case No. 19-CV-11285).)  The BRI Plaintiffs assert claims under the Fifth and Fourteenth Amendments, arguing that the HSTPA "unlawfully interferes with the constitutionally protected right to contract and effects a physical and regulatory taking of private property for public use without just compensation."  (*Id.*)  The NYAG represents all Defendants in the BRI Action.  (*See generally* Dkt., Case No. 19-CV-11285.)[4]

---

[4] Three other actions have been filed in the Southern and Eastern Districts of New York in which building owners and landlords seek to challenge the constitutionality of the RSL, including the 2019 amendments.  These cases are *335-7 LLC v. City of New York*, No. 20-CV-

B. Procedural Background

BRI Plaintiffs commenced the BRI Action on December 10, 2019, and G-Max Plaintiffs commenced the G-Max Action on January 23, 2020. (BRI Compl.; G-Max Compl.)

On March 12, 2020, CVH and T&N sought leave to file a motion to intervene in the G-Max Action, (Dkt. No. 42, Case No. 20-CV-634), and CVH sought leave to file a motion to intervene in the BRI Action, (Dkt. No. 20, Case No. 19-CV-11285). G-Max Plaintiffs and BRI Plaintiffs opposed the basis for the motions in letters filed with the Court on March 19, 2020. (Dkt. No. 44, Case No. 20-CV-634; Dkt. No. 22, Case No. 19-CV-11285.) On April 23, 2020, the Court directed the Parties to file proposed briefing schedules for the Motions. (Dkt. No. 49, Case No. 20-CV-634; Dkt. No. 32, Case No. 19-CV-11285.) CVH and T&N filed proposed schedules for both Motions on April 30, 2020, noting that they waived reply briefs, would limit briefs to ten pages, and that they sought to "maximize the possibility that, if the motions to intervene [were] granted, [Proposed] [I]ntervenors may move to dismiss [G-Max and BRI] Plaintiffs' claims on the same schedule as the [G-Max and BRI] Defendants." (Dkt. No. 52, Case No. 20-CV-634; Dkt. No. 33, Case No. 19-CV-11285.) The Court approved the proposed briefing schedule in both Actions. (Dkt. No. 57, Case No. 20-CV-634; Dkt. No. 38, Case No.

---

1053 (S.D.N.Y.); *Community Housing Improvement Program v. City of New York*, No. 19-CV-4087 (E.D.N.Y.); and *74 Pinehurst LLC v. State of New York*, No. 19-CV-6447 (E.D.N.Y.). CVH and T&N have intervened in all three of these cases. Two of the interventions were granted on consent of all parties, *see Cmty. Hous. Improvement Prog.*, No. 19-CV-4087; *74 Pinehurst LLC v. State of New York*, No. 19-CV-6447, and one of the interventions was granted after briefing on a motion to intervene, *see 335-7 LLC v. City of New York*, No. 20-CV-1053, 2020 WL 3100085 (S.D.N.Y. June 11, 2020).

    G-Max and BRI Plaintiffs assert that these actions are distinguishable because the plaintiffs in the other cases seek to strike down the RSL as a whole, while G-Max and BRI Plaintiffs challenge the constitutionality of the HSTPA specifically, and not the rent stabilization laws as they existed prior to the HSTPA. (*See* G-Max Pls.' Mem. 8 & n.8 (noting that the G-Max Action seeks to nullify only the "statutory amendments enacted by the HSTPA," while the other three actions "seek to strike down the RSL as a whole").)

19-CV-11285.)  Pursuant to this schedule, on May 8, 2020, CVH and T&N filed the G-Max Motion.  (Not. of Mot.; CVH G-Max Mem.; Decl. of Sean Baldwin, Esq. in Supp. of G-Max Mot. ("Baldwin G-Max Decl.") (Dkt. No. 59, Case No. 20-CV-384).)  CVH filed the BRI Motion on the same day.  (Not. of Mot.; Decl. of Sean Baldwin, Esq. in Supp. of BRI Mot. ("Baldwin BRI Decl.") (Dkt. No. 40, Case. No. 19-CV-11285); CVH Mem. of Law in Supp. of BRI Mot. ("CVH BRI Mem.") (Dkt. No. 41, Case No. 19-CV-11285).)  On May 22, 2020, G-Max and BRI Plaintiffs filed their Opposition papers.  (G-Max Pls.' Mem.; BRI Pls.' Mem. of Law in Opp'n to BRI Mot. ("BRI Pls.' Mem."); Decl. of Kenneth J. Finger, Esq. in Opp'n to Mot. ("Finger Decl."); Decl. of Jeremiah Houlihan in Opp'n to Mot. ("Houlihan Decl.") (Dkt. Nos. 42–44, Case No. 19-CV-11285).)  The Court held Oral Argument on the Motions and an additional motion to intervene filed in the BRI Action on July 8, 2020.  (*See* Dkt. (minute entry for July 8, 2020).)  The Court reserved its ruling on all of the Motions.  (*Id.*)

Relatedly, pursuant to the briefing schedule set by the Court for G-Max and BRI Defendants' Motions To Dismiss, CVH and T&N filed their own Motion To Dismiss in the G-Max Action, and CVH filed its own Motion To Dismiss in the BRI Action, on June 19, 2020. (Dkt. Nos. 72–73, Case No. 20-CV-634; Dkt. Nos. 62–63, Case No. 19-CV-11285.)  On July 30, 2020, G-Max Plaintiffs filed their Response, opposing the Motion filed by the G-Max Defendants and the Motion filed by CVH and T&N.  (Dkt. No. 86, Case No. 20-CV-634.)  On August 13, 2020, BRI Plaintiffs did the same.  (Dkt. No. 81, Case No. 19-CV-11285.)  On September 4, 2020, CVH filed a Reply in the BRI Action.  (Dkt. No. 85, Case No. 19-CV-11285.)  On September 11, 2020, CVH and T&N filed a Reply in the G-Max Action.  (Dkt. No. 91, Case No. 20-CV-634.)

## II.  Discussion

### A.  Standard of Review

Federal Rule of Civil Procedure 24 permits a party to intervene in ongoing litigation as of right or by permission of the court.  In seeking intervention under this Rule, the proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention.  *See Seils v. Rochester City Sch. Dist.*, 199 F.R.D. 506, 509 (W.D.N.Y. 2001) ("The moving party has the burden of demonstrating its entitlement to intervene." (citation omitted)).  While accepting "as true the non-conclusory allegations of the motion[,]" courts applying Rule 24 "must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases."  *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009) (citation and quotation marks omitted).

CVH and T&N have moved for permissive intervention under Rule 24(b).  As such, the court may permit a timely application to intervene where the moving party "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "Permissive intervention is wholly discretionary with the trial court."  *Rosado v. Pruitt*, No. 17-CV-4843, 2018 WL 262835, at *3 (E.D.N.Y. Jan. 2, 2018) (quotation marks omitted) (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)).  The Second Circuit has instructed that "[t]o be granted intervention as of right or by permission, 'an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'"  *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quoting *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)).  As such, "court[s] consider[] substantially the same factors

10

whether the claim for intervention is 'of right' under [Rule 24(a)(2)], or 'permissive' under [Rule 24(b)(1)(B)]." *R Best Produce*, 467 F.3d at 240; *see also Kamdem-Ouaffo*, 314 F.R.D. at 134 n.4 (same).  The Second Circuit has "underscored that a failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Floyd*, 770 F.3d at 1057 (emphasis in original) (alteration and quotation marks omitted) (quoting *R Best Produce*, 467 F.3d at 240).

The Second Circuit has also instructed, however, that "[t]he principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) (alteration in original) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)).  Accordingly, district courts in the Second Circuit have recognized that the four factors should be considered "as a whole[,] rather than focusing narrowly on any one of the criteria," and that application of the factors is "flexible and discretionary." *Grewal v. Cuneo*, No. 13-CV-6836, 2014 WL 2095166, at *3 (S.D.N.Y. May 20, 2014) (citation and quotation marks omitted).  Other relevant factors in deciding whether to allow permissive intervention include "the nature and extent of the intervenors' interests," and "whether [the] parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.* (quotation marks omitted) (quoting *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)).

"The district court's discretion under Rule 24(b)(2) is very broad." *H.L. Hayden Co.*, 797 F.2d at 89 (citations omitted); *see also St. John's Univ., N.Y. v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011) ("A district court has broad discretion under Rule 24(b) to determine whether to permit intervention on the basis that the intervenor's claim or defense and the main action have a

question of law or fact in common." (citations and quotation marks omitted)).  Indeed,

"[r]eversal of a district court's denial of permissive intervention is a very rare bird indeed, so

seldom seen as to be considered unique."  *AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d

Cir. 2005) (quotation marks omitted) (quoting *Pitney Bowes*, 25 F.3d at 73).

B.  Analysis

In the BRI Action, CVH argues that its Motion is timely, its defense shares common

questions of law with the BRI Defendants, its intervention will not delay or otherwise prejudice

the Parties, many of its members would be prejudiced were the Court to deny intervention, and

that intervention "will assist in the just and equitable adjudication of this case."  (CVH BRI

Mem. 6–10.)  BRI Plaintiffs argue that intervention is improper because CVH's Motion is

untimely, CVH does not have a direct interest in the BRI Action that would be impaired if

intervention is denied, CVH has not identified specific members who are impacted by the BRI

Action, the intervention would delay and prejudice the original Parties, and the NYAG will

adequately defend CVH's interests.  (BRI Pls.' Mem. 4–10.)

In the G-Max Action, CVH and T&N assert similar arguments in favor of intervention.

(CVH G-Max Mem. 6–10.)  CVH and T&N further argue that inadequate representation of their

interests should be a "minor factor" in the Court's consideration.  (*Id.* at 10.)  G-Max Plaintiffs

argue that intervention is not warranted because it is undisputed that New York State is able to

adequately defend the HSTPA, CVH and T&N do not assert claims or defenses of their own, and

intervention would prejudice G-Max Plaintiffs and expand proceedings.  (G-Max Pls.' Mem. 4–

10.)

### 1. Timeliness, Undue Delay, and Prejudice

BRI Plaintiffs contend that CVH's Motion is untimely due to the length of time between when CVH learned of the Action and when CVH sought to file its Motion. (BRI Pls.' Mem. 4–5.) G-Max Plaintiffs do not appear to argue that CVH and T&N's Motion should be denied on this basis. (*See generally* G-Max Pls.' Mem.) Thus, the Court addresses this argument only as it relates to the BRI Action.

Under both relevant provisions of Rule 24, the threshold inquiry is whether the application for intervention is timely. Among the factors to be considered are: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Pitney Bowes*, 25 F.3d at 70 (citation omitted).

While courts use these four factors as a guide, the determination of whether a motion to intervene is timely must be "evaluated against the totality of the circumstances before the court." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (citation and quotation marks omitted); *see also Pitney Bowes*, 25 F.3d at 70 (explaining that "[t]imeliness defies precise definition"); *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986) ("The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion." (collecting cases)); *Authors Guild v. Google, Inc.*, No. 05-CV-8136, 2009 WL 3617732, at *2 (S.D.N.Y. Nov. 4, 2009) (noting that "the district court's discretion is broad" in intervention cases (citation omitted)). Nevertheless, "the length of time the applicant knew or should have known of his interest before making the motion" is "[a]mong the most important factors" to be considered in determining timeliness. *Catanzano ex rel. Catanzano v. Wing*, 103

F.3d 223, 232 (2d Cir. 1996) (citation and quotation marks omitted); *see also Authors Guild*, 2009 WL 3617732, at *2 (same).

BRI Plaintiffs filed their Complaint on December 10, 2019.  (BRI Compl.)  On March 12, 2020, counsel for CVH filed appearances and sought to file the instant Motion.  (Dkt. Nos. 16– 20.)  Assuming that CVH knew of the BRI Action on December 10, 2019, when the Complaint was filed, three months elapsed before CVH sought permission from the Court to file its Motion. Other courts have found similar or even longer delays before filing to be timely, particularly when a party sought to intervene "at a very early stage in th[e] litigation," and "prior to any significant substantive motions," as the Proposed Intervenors did in both of these Actions. *Schaghticoke Tribal Nation v. Norton*, No. 06-CV-81, 2006 WL 1752384, at *8 (D. Conn. June 14, 2006); *see also Pike Co., Inc. v. Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376, 394 (W.D.N.Y. 2018) (noting that a five-month delay did not require the court to reject a request for permissive intervention) (collecting cases); *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 86–88 (D. Conn. 2014) (finding that a permissive intervention would not delay the action when the intervenors moved to intervene three months after the action was commenced and agreed to abide by the existing scheduling order); *Herdman v. Town of Angelica*, 163 F.R.D. 180, 185 (W.D.N.Y. 2005) (finding that a motion to intervene as of right filed ten weeks after an action commenced was timely); *S.E.C. v. Credit Bancorp, Ltd.*, No. 99-CV-11395, 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) (noting that with respect to a motion to intervene under Rule 24(b), a five-month delay "was not so protracted as to render [the] motion untimely under all the circumstances").  Accordingly, CVH's Motion in the BRI Action was not untimely based on the length of time before the Motion was made.

With respect to undue prejudice and delay, the "principal guide in deciding whether to grant permissive intervention," *Pitney Bowes*, 25 F.3d at 73, both BRI and G-Max Plaintiffs argue that the proposed interventions would unduly delay and prejudice the original Parties, (BRI Pls.' Mem. 7–8; G-Max Pls.' Mem. 7–9).  According to BRI Plaintiffs, CVH's intervention, which they argue raises a "myriad of [additional] issues," will require additional "data collection, depositions, discovery[,] and motions."  (BRI Pls.' Mem. 8.)  BRI Plaintiffs also argue that CVH's intervention will require "extensive discovery" of unrelated issues raised by CVH in its Motion papers.  (*Id.* at 6.)  According to G-Max Plaintiffs, allowing intervention by CVH and T&N will add additional time to the proceedings and increase the volume of briefs to which G-Max Plaintiffs must respond.  (G-Max Pls.' Mem. 7–8.)  G-Max Plaintiffs also argue that their concerns of delay are amplified because CVH and T&N "mischaracteriz[e] th[e] [A]ction" by suggesting that the G-Max Action "seeks to invalidate the entire system of rent regulation," while G-Max Plaintiffs instead seek to "nullify[] the statutory amendments enacted by the HSTPA" in June 2019, and not dismantle rent regulation as a whole.  (*Id.* (record citations and quotation marks omitted).)  G-Max Plaintiffs also suggest that additional discovery may be burdensome because along with a facial constitutional challenge, the G-Max Plaintiffs bring as-applied challenges.  (*Id.* at 9.)

The Court finds that little to no delay would result from allowing intervention by CVH in the BRI Action and by CVH and T&N in the G-Max Action.  The Proposed Intervenors agreed to be subject to the same briefing schedule as Defendants' Motions To Dismiss and filed their Motions and Replies in line with this schedule in both Actions.  (*See* Dkt. Nos. 62–63, 85, Case No. 19-CV-11285; Dkt. Nos. 72–73, 91, Case No. 20-CV-634.)  Further, "the [G-Max and BRI] Plaintiffs cannot claim an appreciable burden from having to respond to Proposed Intervenors'

legal arguments," as the Court could have accepted submissions as amicus curiae from G-Max and BRI. *335-7 LLC*, 2020 WL 3100085, at *4. Further, these Actions are "in [their] infanc[ies]," *Friends of E. Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-CV-441, 2016 WL 792411, at *9 (E.D.N.Y. Feb. 29, 2016), and "[t]he [c]ourt, moreover, has not needed to extend any preexisting deadlines or reschedule any proceedings to accommodate . . . [the] [i]ntervenors," *Yang v. Kellner*, No. 20-CV-3325, 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020).

Similarly, with respect to the BRI and G-Max Plaintiffs' arguments regarding possible additional discovery and motion practice, such concerns are "premature," as the Court has not yet made any decisions on the merits of the Motions To Dismiss, and "[t]o the extent that [Plaintiffs'] concern is directed at the possibility of duplicative[,] [excessive, or irrelevant] requests for discovery, that concern can be addressed by this Court's authority to supervise discovery." *335-7 LLC*, 2020 WL 3100085, at *4; *see also Kleeberg v. Eber*, No. 16-CV-9517, 2019 WL 1416898, at *3 (S.D.N.Y. Mar. 28, 2019) (noting, on an unopposed motion to intervene, that allowing an intervention would not unreasonably delay the action because discovery was ongoing); *Essex Ins. Co. v. Interstate Fire & Safety Equip. Co.*, No. 07-CV-919, 2008 WL 2228832, at *2 (D. Conn. May 23, 2008) (finding that a permissive intervention would not delay or prejudice adjudication of the rights of the original parties when discovery had "only recently concluded . . . and [wa]s likely to be extended[], dispositive motions ha[d] yet to be filed, and [the proposed intervenor] submit[ted] it w[ould] abide by all previously set schedules in the matter"); *cf. Gould v. United States*, No. 11-CV-4244, 2012 WL 75425, at *2 (S.D.N.Y. Jan. 4, 2012) (noting that if the court had allowed a permissive intervention, discovery, which had already commenced, would have had to be extended).

16

As noted, G-Max Plaintiffs also argue that they would be prejudiced by CVH and T&N's "mischaracterization" of the Action, and contend that intervention would "prejudice [G-Max] Plaintiffs by muddying the constitutional questions actually presented." (G-Max Pls.' Mem. 8–9.) With respect to this argument, the Court recognizes that Proposed Intervenors use sweeping language in portions of their Motion papers, arguing that Plaintiffs in both Actions seek to "invalidate the entire system of rent regulation that has existed since at least 1969," (Cadore Decl. ¶ 22), and to "end rent regulation," (Atta-Mensah Decl. ¶ 20). However, given that in both Actions, Proposed Intervenors seek to intervene as Defendants and, for example, file Motions To Dismiss, their arguments will presumably be limited by the assertions in the Complaints. For example, CVH and T&N both represent that their Motions To Dismiss are based "on the claims in the [C]omplaints" and that overall, they aim to address the fundamental question of "whether the EPTA, *as amended by the HSTPA*, is constitutionally sound." (CVH G-Max Mem. 7; CVH BRI Mem. 7 (emphasis added).) Further, were the Court to grant intervention, it would predicate the Proposed Intervenors' involvement on "the issues framed by the existing parties." *New York v. Abraham*, 204 F.R.D. 62, 67 (S.D.N.Y. 2001) (granting a motion to intervene when a proposed intervenor, who sought to intervene as a defendant in an action, "represented that, notwithstanding the arguments in its papers . . . , it w[ould] not seek to broaden the issues in th[e] litigation"). Additionally, although G-Max Plaintiffs argue that "[a]dditional parties always take additional time," (G-Max Pls.' Mem. 7 (quotation marks removed) (quoting *British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 71 F.R.D. 583, 585 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir. 1976)), the Court finds that at this early stage, intervention will not *unduly* delay either case.

Thus, the Court finds that CVH's Motion To Intervene in the BRI Action and CVH and

T&N's Motion To Intervene in the G-Max Action are timely, and that neither set of Plaintiffs

will be unduly prejudiced or delayed by the intervention.

### 2.  Interest in the Action

BRI Plaintiffs argue that the "essence" of their Action is that the HSTPA is an

"unconstitutional derogation of the rights of landlords," while CVH's reason for seeking to

intervene "has nothing to do with the constitutionality of the HSTPA but is rather an argument

against the harassment by certain landlords of tenants and the tenants' need for [the] ETPA's

regulatory protection."  (BRI Pls.' Mem. 2.)  G-Max Plaintiffs argue that intervention is

improper because Proposed Intervenors have not identified any claim or defense that they assert

"in their own right," and instead seek to base their Motion To Dismiss "on the claims in the

[C]omplaints and defenses in the [D]efendants' Rule 12 motions."  (G-Max Pls.' Mem. 6 (record

citation and quotation marks omitted).)  As such, CVH and T&N will simply "rehash" any

arguments made by the existing G-Max Defendants.  (*Id.*)  G-Max Plaintiffs argue that they "do

not, and could not, assert any claims against [CVH and T&N]," and that if these Parties were

allowed to intervene, "any private party could intervene to 'defend' any statute's

constitutionality."  (*Id.* at 7.)

Rule 24(b) requires a party seeking permissive intervention to have "a claim or defense

that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).

It is well-established by district courts in the Second Circuit that "[t]he words 'claim or defense'

are not read in a technical sense, but only require some interest on the part of the applicant."

*United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018) (citation and some

quotation marks omitted); *see also Kearns v. Cuomo*, No. 19-CV-902, 2019 WL 5060623, at *4

(W.D.N.Y. Oct. 9, 2019) (same); *Up State Tower Co., LLC v. Town of Cheektowaga*, No. 19-CV-280, 2019 WL 4452413, at *3 (W.D.N.Y. Sept. 17, 2019) (same); *1199 SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park*, No. 18-CV-3336, 2018 WL 9651077, at *3 (S.D.N.Y. Sept. 4, 2018) (same); *Pike Co.*, 284 F. Supp. 3d at 396 (same); *Friends of E. Hampton Airport*, 2016 WL 792411, at *8 (same); *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011) (same); *Techcapital Corp. v. Amoco Corp.*, No. 99-CV-5093, 2001 WL 267010, at *3 (S.D.N.Y. Mar. 19, 2001) (same); *Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995) (same).  "If common issues of law or fact exist, the decision whether to allow intervention is left to the district court's discretion." *Gulf Underwriters Ins. Co. v. Hurd Ins. Agency*, No. 03-CV-1277, 2004 WL 2935794, at *2 (D. Conn. Dec. 16, 2004).

The Court finds no reason to depart from this well-established standard.  Here, Proposed Intervenors satisfy this requirement in both Actions, as their "anticipated defense will share with the main [A]ction a fundamental question of law: whether the [RSL and/or ETPA], *as amended by the HSTPA*, is constitutionally sound."  (CVH G-Max Mem. 7; CVH BRI Mem. 7 (emphasis added).)  Indeed, this is the same question that BRI and G-Max Plaintiffs seek to have answered. (*See* BRI Pls.' Mem. 3 ("It is exclusively the amendment of the ETPA by the HSTPA that is objected to in this [A]ction."); G-Max Pls.' Mem. 4 ("The *only* legal question in this case is whether the HSTPA violates [G-Max] Plaintiffs' constitutional and statutory rights." (emphasis in original)), 8 ("[G-Max Plaintiffs'] claims are aimed exclusively at nullifying the statutory amendments enacted by the HSTPA, which took effect June 14, 2019.  In other words, they seek

to return rent stabilization to its very-much-alive pre-June 2019 state . . . ." (record citation and footnote omitted)).)[5]

Accordingly, Proposed Intervenors satisfy Rule 24(b)(1)(B)'s requirement that they have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also 335-7 LLC*, 2020 WL 3100085, at *3 ("[T]here is no dispute that [the] [p]roposed [i]ntervenors' defenses share the same fundamental question of law with the main suit: the constitutionality of the RSL *as amended* in 2019." (emphasis added) (citation and footnote omitted)); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, No. 18-CV-11657, 2020 WL 1432213, at *8 n.9 (S.D.N.Y. Mar. 24, 2020) (noting that the court would have granted permissive intervention by several students and educational organizations in a case regarding the alleged disparate impact of an educational program, because the proposed intervenors, like the defendants, sought to defend the program, and thus shared common questions of law and fact with the main suit); *Assoc. of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007) (finding that the proposed intervenors shared "the same or similar questions of law and fact" with the main action, which challenged the constitutionality of Connecticut's campaign finance reform laws); *Miller v. Silbermann*, 832 F. Supp. 663, 673–74 (S.D.N.Y. Sept. 13, 1993) ("The [p]roposed [i]ntervenors' defense raises the same legal

---

[5] G-Max Plaintiffs base their claim-and-defense argument on *Marriott v. County of Montgomery*, 227 F.R.D. 159 (N.D.N.Y. 2005), stating that "there is no question of law or fact in common with the main action because there is no asserted claim or defense." (G-Max Pls.' Mem. 6.) However, neither *Marriott*, nor G-Max Plaintiffs, address the long line of cases expounding on Rule 24(b)(1)(B)'s "claim or defense" language, other than to argue that such a reading is "inconsistent with the Rule's plain text." (*Id.* at 6 n.6.) Further, Proposed Intervenors represent that they do have a "defense [that] will . . . share common questions with the main [A]ction, as required by [Rule] 24(b)(1)(B)." (CVH G-Max Mem. 7.)

questions as the defense of the named defendants—all claims concern the constitutionality of the

Housing Court's policies and procedures.").[6]

### 3. Nature, Extent, and Impairment of Interest

BRI Plaintiffs argue that although CVH represents that it has firsthand experience with

the issues addressed by the HSTPA, CVH does not have a "direct, substantial, legally protectable

interest" in this litigation.  (BRI Pls.' Mem. 5–7 (quotation marks omitted).)  Specifically, BRI

Plaintiffs take issue with the fact that CVH has not identified any specific members who are

interested in or affected by the Action, or who "ha[ve] standing with respect to the [BRI]

Plaintiffs' constitutional claims."  (*Id.* at 7.)  G-Max Plaintiffs do not appear to specifically

dispute the nature and extent of Proposed Intervenors' interest, although they do argue that G-

Max Plaintiffs "seek only to . . . return to the pre-[HSTPA] state of affairs," which they argue is

a narrower interest than that asserted by CVH and T&N.  (G-Max Pls.' Mem. 2.)

"In discussing interest in the context of intervention *as of right*, the Supreme Court has

stated that the interest must be . . . direct, as opposed to remote or contingent."  *Oneida Grp. Inc.*

*v. Steelite Int'l U.S.A. Inc.*, No. 17-CV-957, 2017 WL 6459464, at *12 (E.D.N.Y. Dec. 15, 2017)

(emphasis added) (quotation marks omitted) (quoting *Restor-A-Dent Dental Labs., Inc. v.*

*Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984)).  Further, with respect to such an

intervention, the interest must be "direct, substantial, and legally protectable," and not "remote

from the subject matter of the proceeding, or . . . contingent upon the occurrence of a sequence of

---

[6] G-Max Plaintiffs argue that *Miller* "should be afforded no persuasive value," particularly with respect to Defendants' ability to adequately defend the HSTPA, because it is "wrong on the law, factually distinct . . . , cursory in its analysis, and reliant on two earlier, inapposite district court cases."  (G-Max Pls.' Mem. 5.)  However, with respect to Proposed Intervenor's interest in the Action, *Miller* is instructive, and although G-Max Plaintiffs assert that *Miller* is outdated and incorrectly decided, the case does remain valid in the Second Circuit.

events before it becomes colorable." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96–97 (2d Cir. 1990) (collecting cases).

CVH and T&N represent that they are "two of the largest and most well-respected tenant-advocacy organizations in New York," and have "many members living in rent-stabilized homes across the five boroughs and Westchester County." (CVH G-Max Mem. 1; CVH BRI Mem. 1.) CVH is "principally comprised of women of color and low-income families in New York State," (Atta-Mensah Decl. ¶ 2), and T&N "represents over 2[,]000 dues paying tenant members," 80 percent of whom are "rent-regulated tenants and tenants' associations," (Cadore Decl. ¶ 6). According to T&N, "the enactment of HSTPA has meant that [their members] have started to lose the fear of being pushed out of their homes and becoming homeless." (*Id.* ¶ 24.) Thus, T&N and CVH argue that they would be prejudiced by denial of their Motions, as they represent "the class of persons most affected by the outcome of this [A]ction: tenants in rent stabilized homes," who "risk losing their homes or suffering catastrophic rent increases if . . . Plaintiff[s] prevail." (CVH G-Max Mem. 1, 8; CVH BRI Mem. 1, 8.)  Proposed Intervenors further represent that were Plaintiffs to succeed, their "numerous members . . . would be directly affected" by the decision, and Proposed Intervenors would need to "divert resources" to assist some of these members.  (CVH G-Max Mem. 9 n.19; CVH BRI Mem. 9 n.19.)  Beyond their broad experience with rent regulations in New York generally, T&N and CVH cite the nature and extent of their experience with the HSTPA in particular, arguing that they "lobbied extensively for the bills which became the [HSTPA]." (Cadore Decl. ¶ 20; Atta-Mensah Decl. ¶¶ 17–18.)  For example, in 2019, CVH "lobbied elected officials in Albany and at home" and "attended multiple rallies in Albany" in order to, inter alia, expand the ETPA.  (Atta-Mensah Decl. ¶ 17.)  CVH members also testified at New York State Senate Committee hearings

regarding amendment of the ETPA.  (*Id.* ¶ 18.)  Similarly, T&N has lobbied extensively for the bills that became the HSTPA, including by testifying before New York State Senate Committees, making trips to Albany with members, and meeting with Governor Cuomo's Office to discuss proposals to amend the rent laws.  (Cadore Decl. ¶¶ 20–21.)  "Organizations may have sufficient interest to support intervention . . . in actions involving legislation or regulations previously supported by the organization."  *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 102 (E.D.N.Y. 1996) (citation omitted).

The Court finds that CVH and T&N have demonstrated sufficiently direct and substantial interests in the outcome of these Actions.  Not only have they represented that their members, who are rent-stabilized tenants, and their own allocation of resources could be affected by revocation of the HSTPA, but both CVH and T&N played an active role in the formation and passage of the HSTPA.  This is sufficient to demonstrate an interest under Rule 24(b).  *See Kearns*, 2019 WL 5060623, at *5 (determining that proposed intervenors had a "direct, substantial, and legally protectable interest" when, inter alia, organizations that comprised the intervenors "played critical roles" in the passage of the law at issue); *Garfield*, 241 F.R.D. at 103 (finding that proposed intervenors had "substantial interests in the outcome of the case," when the constitutionality of campaign finance reform laws was at issue and could affect the intervenors' access to campaign funds and the manner in which they were able to lobby); *Rubin*, 170 F.R.D. at 106 (finding that proposed intervenors, who included rabbis, kosher consumers, and rabbinical and lay organizations all had "an interest in the enforcement and the constitutionality of the Kosher Laws"); *Miller*, 832 F. Supp. at 671 (noting that proposed intervenors had an interest in the action when, inter alia, the "[t]enants may face increased

hardship" based on the ultimate outcome of the case).[7]  Indeed, Proposed Intervenors cite to a number of specific issues that the HSTPA addressed, arguing that it "modif[ied] or eliminat[ed] provisions in the RSL that provided perverse incentives for landlords to seek eviction of their tenants and fraudulently raise rents."  (CVH G-Max Mem. 4–5.)  Presumably, Proposed Intervenors are concerned that were the HSTPA deemed unconstitutional, these protections would no longer be in place, and some of its members may be directly impacted by suffering eviction or raised rents.  Further, Proposed Intervenors suggest that they will be impacted were the HSTPA to be revoked, they would need to divert resources to assist families impacted by the decision.  (*Id.* at 9 n.19.)

Thus, the Court finds that Proposed Intervenors have a direct and substantial interest in the outcome of this Action.

### 4.  Contribution to Factual Development and Adjudication of Legal Questions

The Court also finds that CVH and T&N will "undoubtedly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication

---

[7] Although BRI Plaintiffs argue that CVH has not named any specific members who "ha[ve] standing with respect to the [BRI] Plaintiffs' constitutional claims," (BRI Pls.' Mem. 7), it is unclear that CVH needs to demonstrate standing in order to intervene permissively here, where it takes the same position as BRI and G-Max Defendants—that the HSTPA is constitutional.  *Cf. Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (holding, with respect to an intervening plaintiff, that "an intervenor of right must demonstrate Article III standing when it seeks *additional relief* beyond that which the plaintiff requests" (emphasis added)); *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 233 (2003) (noting that because the original defendant in the action had standing, it was unnecessary to "address the standing of the intervenor-defendants, whose position . . . [was] identical to the [original defendant's]" (collecting cases)), *overruled on other grounds*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010).  Moreover, CVH has represented that it has "numerous members . . . whose interests would be directly affected should the [BRI and G-Max] Plaintiffs succeed; the interests that [it] seek[s] to protect are germane to Proposed Intervenors' purpose; and participation of individual members is not required."  *335-7 LLC*, 2020 WL 3100085, at *3 n.10 (citation omitted).  CVH also represents that "if Plaintiffs prevail, [it] will have to divert resources to assist" families affected by the outcome.  (CVH G-Max Mem. 9 n.19.)

of the legal questions presented." *335-7 LLC*, 2020 WL 3100085, at *3 (citation and quotation marks omitted). Both organizations "closely serve tenants" in rent stabilized housing who they represent have benefitted from the HSTPA and have been "involved in efforts in connection with" the HSTPA, as well as other rent stabilization laws. *Id.* And, as explained by State Defendants during the Oral Argument, Proposed Intervenors "have vast experience in the trenches in housing court" and can "bring to bear on the briefing their detailed knowledge of how the law operated, why the Legislature deemed it appropriate to close the loopholes it identified, and how the . . . tenants . . . are likely to be affected in the future if the HSTPA stands or, conversely if the [G-Max and BRI] Plaintiffs persuade the Court that portions of it are questionable." (Tr. 43–44.)[8] Thus, the Court believes that their perspective will be "unique, personal[,] and highly relevant," and that they will bring "specialized expertise and substantial familiarity" to the Action. *Garfield*, 241 F.R.D. at 103; *see also Christa McAuliffe Intermediate Sch. PTO*, 2020 WL 1432213, at *8 n.9 ("[The] [p]roposed [i]ntervenors include . . . organizations that serve [children affected by the educational program at issue] . . . . This is a unique perspective and will greatly contribute to the [c]ourt's understanding of this case." (citation and quotation marks omitted)); *Rubin*, 170 F.R.D. at 106 ("The intervenors will bring a different perspective to the case and will contribute relevant factual variations that may assist the court in addressing the constitutional issue raised.").

### 5.  Adequate Protection of Interests

Proposed Intervenors argue that "[i]ntervention remains valuable even where the government will defend the law at issue," and that inadequate representation is "'clearly a minor factor at most' in considering permissive intervention." (CVH G-Max Mem. 10 (quoting *N.Y.C.*

---

[8] The Court cites to a draft transcript provided to the Court by the court reporter.

*Hous. Auth.*, 326 F.R.D. at 418).)  G-Max Plaintiffs counter that because it is "undisputed" that

the government can adequately defend the HSTPA, under *Floyd*, Proposed Intervenors have

failed to "show that the[ir] interest is not protected adequately by the parties to the action,"

which is "sufficient ground to deny the application."  (G-Max Pls.' Mem. 4 (quotation marks

omitted) (quoting *Floyd*, 770 F.3d at 1057).)  BRI Plaintiffs make similar arguments, asserting

that CVH has not made a showing that representation by the NYAG would be inadequate.  (BRI

Pls.' Mem. 9–10.)

In *Floyd*, the Second Circuit affirmed a district court's denial of a motion to intervene as

of right and by permission on the grounds of timeliness and interest in the action.  *See generally*

770 F.3d 1051.  While focused on the applicability of these two factors, the Second Circuit stated

that generally, "[t]o be granted intervention as of right or by permission, 'an applicant must (1)

timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may

be impaired by the disposition of the action, and (4) show that the interest is not protected

adequately by the parties to the action.'"  *Id.* at 1057 (quoting *R Best Produce, Inc.*, 467 F.3d at

240).  The Court "underscored that a failure to satisfy *any one* of these four requirements is a

sufficient ground to deny the application."  *Id.* (emphasis in original) (citation, alteration, and

quotation marks omitted).

However, "[w]hile a failure to satisfy any one of these four criteria is sufficient for a

court to deny a motion to intervene," courts have also recognized, even when applying these

factors to an intervention as a matter of right under Rule 24(a), that "the test is a flexible and

discretionary one, and courts generally look at all four factors as a whole rather than focusing

narrowly on any one of the criteria."  *Grewal*, 2014 WL 2095166, at *3 (citations and quotation

marks omitted).  Indeed, the Second Circuit has found that these four factors, as listed under

Rule 24(a), are "a nontechnical directive to courts that provides the flexibility necessary to cover the multitude of possible intervention situations, and that requires consideration of all of the competing and relevant interests raised by an application for intervention." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984) (citations and quotation marks omitted).  Specifically, "[t]he various components of the Rule are not bright lines, but ranges—not all 'interests' are of equal rank, . . . [and] representation by existing parties may be more or less adequate . . . .  Application of the Rule requires that its components be read not discretely, but together." *Id.*  For example, "[a] showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation." *Id.*  Indeed, this Court has recognized that "courts applying Rule 24 must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases." *Kamdem-Ouaffo*, 314 F.R.D. at 134 (citation and quotation marks omitted).

Putting the persuasive value of *Miller* aside, even after *Floyd*, district courts in the Second Circuit have continued to recognize the aforementioned flexibility of these factors, especially in the context of permissive interventions, and have determined that "while existing adequate representation may militate against allowing permissive intervention, such intervention may still be appropriate if the addition of the intervenors will assist in the just and equitable adjudication of any of the issues between the parties." *N.Y.C. Hous. Auth.*, 326 F.R.D. at 418 (citations and quotation marks omitted); *see also 335-7 LLC*, 2020 WL 3100085, at *4 (same); *New York v. U.S. Immigration & Customs Enforcement*, No. 19-CV-8876, 2019 WL 7816835, at *1 (S.D.N.Y. Dec. 17, 2019) (noting that "[e]ven where a party does not meet the[] requirements [under Rule 24(a)(2)], a court may, in its discretion, grant permissive intervention under [Rule 24(b)(1)(B)]"), *reconsideration denied*, 2020 WL 498246 (S.D.N.Y. Jan. 3, 2020); *In re Reyes*,

No. 19-CV-7219, 2019 WL 6170901, at *2 (S.D.N.Y. Nov. 20, 2019) (granting an unopposed motion for permissive intervention, even when the movant did not demonstrate how its interests would not be adequately protected, because the motion was timely and the movant asserted a related interest); *Up State Tower Co.*, 2019 WL 4452413, at *3 ("Rule 24(b) does not list inadequacy of representation as one of the considerations for the court in exercising its discretion under Rule 24(b) and although a court may consider it, it is clearly a minor factor at most." (citation and quotation marks omitted)); *New York v. U.S. Dep't of Health & Human Servs.*, Nos. 19-CV-4676, 19-CV-5433, 19-CV-5435, 2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019) ("[T]o grant permissive intervention, Rule 24(b) does not require a finding that party representation be inadequate." (citation omitted)); *Peterson v. Islamic Republic of Iran*, No. 10-CV-4518, 2018 WL 4691221, at *13 (S.D.N.Y. July 10, 2018) ("Although a failure to establish an applicant's rights will not be protected adequately by the parties to a litigation precludes a finding that intervention is available as of right, it does not foreclose permissive intervention if the [c]ourt determines, in its broad discretion, that the foregoing considerations weigh in favor of intervention and that the [intervenor's] claim and th[e] [main] action have a question of law or fact in common." (citations omitted)); *Oneida Grp. Inc.*, 2017 WL 6459464, at *13 (collecting cases finding that permissive intervention was warranted where there was adequacy of representation).

Although Proposed Intervenors acknowledged during oral argument that they do not expressly challenge the adequacy of the State and the City's representation, (Tr. 7), and recognize that "rent-stabilized tenants share with . . . Defendants the ultimate goal of preserving New York's carefully crafted system of rent stabilization," (CVH G-Max Mem. 8–9), Proposed Intervenors have also claimed that the tenants they represent may face consequences were the

HSTPA to be revoked, (*id.*).  Although G-Max and BRI Plaintiffs contend that such statements

sweep beyond the focus of their Actions, (G-Max Pls.' Mem. 2 ("Proposed Intervenors

repeatedly (and mistakenly) suggest that Plaintiffs seek to 'dismantle' or 'nullify' the entire rent-

stabilization regime.")), Proposed Intervenors point to specific protections that the HSTPA in

particular affords to tenants, such as caps on rent increases, (CVH G-Max Mem. 4–5).  Thus,

although Proposed Intervenors share objectives similar to those of G-Max and BRI Defendants,

their interest in these objectives may differ, a factor that some courts have found relevant in

analyzing the adequacy of representation prong.  *See Pike Co.*, 284 F. Supp. 3d at 397 (granting a

motion for permissive intervention when, inter alia, "[a]lthough [the plaintiff and the proposed

intervenor] share[d] a similar objective . . . their ultimate interests [we]re very different"

(collecting cases)); *Garfield*, 241 F.R.D. at 103 (noting that, when the "primary motivations" of

the government defendants and proposed intervenors diverged, it was "possible that the

government may not emphasize or vigorously defend all aspects of the challenged law that

[we]re critical to the movants' interests" (citation omitted)); *cf. Coleman v. County of Suffolk*,

174 F. Supp. 3d 747, 754 (E.D.N.Y. 2016) (permitting a motion to intervene in order to oppose a

motion to seal when the defendant county "represent[ed] the agency as a whole," and the

proposed intervenor "represent[ed] the interest of its members" (record citation and quotation

marks omitted)), *aff'd*, 685 F. App'x 69 (2d Cir. 2017).[9]  Moreover, Proposed Intervenors

explained during oral argument that they and their clients "brought the State to an

understanding" of issues that needed to be addressed by the HSTPA, (Tr. 13), and, as recognized

---

[9] Further, to the extent BRI Plaintiffs contend that CVH faces a higher burden to
intervene because the State is a Defendant, the case law BRI Plaintiffs cite for this proposition is
related to motions to intervene as of *right* under Rule 24(a), and a number of the cited cases are
from outside of the Second Circuit.  (*See* BRI Pls.' Mem. 8–10.)

by State Defendants, "[DHCR], as well as the State Attorney General's Office . . . do not always act in lockstep with tenants," (*id.* at 43 (State Defendants also "personally vouch[ed]" for this statement, "having defended a number of state law proceedings brought by disgruntled tenants against DHCR")). The chance for such a divergence also supports intervention in this Action.

Therefore, although "courts have reached varying conclusions as to whether individuals or entities interested in litigation involving the constitutionality of a state statute should be permitted to intervene pursuant to Rule 24(b)(1)(B)," *Kearns*, 2019 WL 5060623, at *4 (collecting cases), the Court finds that here, given the timeliness of Proposed Intervenors' Motions, their interest in the Actions, the lack of prejudice to the other Parties, and the Proposed Intervenors' "unique, personal[,] and highly relevant . . . perspective [on the HSTPA], its development, and its impact," Proposed Intervenors will "assist in the just and equitable adjudication of any of the issues between the [P]arties," *Allco Fin. Ltd.*, 300 F.R.D. at 88 (citation and quotation marks omitted). Accordingly, the Motions To Intervene by CVH in the BRI Action and CVH and T&N in the G-Max Action are granted.

### III.  Conclusion

For the foregoing reasons, CVH's Motion To Intervene in the BRI Action and CVH and T&N's Motion To Intervene in the G-Max Action are granted.

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. No. 39, Case No. 19-CV-11285; Dkt. No. 58, Case No. 20-CV-634).

SO ORDERED.

DATED:       September 23, 2020
             White Plains, New York

             _____
             KENNETH M. KARAS
             UNITED STATES DISTRICT JUDGE