LAW OFFICES
**FINGER & FINGER**
A PROFESSIONAL CORPORATION

*KENNETH J. FINGER*
*DOROTHY M. FINGER*
*CARL L. FINGER**
*DANIEL S. FINGER***

*\* admitted in NY & CT*
*\*\* admitted in NY & NJ*

**158 Grand Street**
**White Plains, New York 10601**
**914 949-0308x309**
*FAX:* **914-949-3608**
*e-mail:kenneth@fingerandfinger.com*

July 12, 2021

BY ECF

Hon. Kenneth M. Karas
United States District Judge
The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, New York 10601-4150

<u>RE:  BRI et al v. State of New York,  19 Civ. 11285 (KMK)(JCM)</u>

Dear Judge Karas:

The Building and Realty Institute of Westchester and Putnam Counties, Inc., the Apartment Owners Advisory Council and assorted landlord/owners of Emergency Tenant Protection Act rent regulated multi family real estate in Westchester County brought the above litigation challenging the constitutionality of the 2019 Housing Stability and Tenant Protection Act (HSTPA), effective in June, 2019.

By letter dated July 7, 2021, we discussed the applicability of the decision of the United States Supreme Court in the case of *Cedar Point Nursery v. Hassid*, 594 U.S. --- (2021).  Not surprisingly, the State of New York, in a letter to the Court dated July 9, 2021, argued that *Cedar Point* was inapplicable.

However, *Cedar Point* has already been cited by the Supreme Court for the propositions advanced by the Plaintiffs herein in the case of *Peyman Pakdel et ux v. City and County of San Francisco, et al*, 594 U.S. _____ (2021)[decided June 28, 2021].[1]  In *Pakdel*, the Petitioners were the owners of multi family housing.  They objected to a statutory requirement that in order to convert their property to condominiums, they had to agree to the statutory requirement that they offer their tenants a lifetime lease. Petitioners challenged the requirement alleging among other things that the lifetime lease requirement was an unconstitutional regulatory taking.  For various reasons the District Court dismissed their claims which decision was affirmed by the Ninth Circuit. The Supreme Court held that "[g]iven that the Fifth Amendment enjoys 'full-fledged constitutional status,' the Ninth Circuit had no basis to relegate petitioners' claim 'to the status of a poor relation' among the provisions of the Bill of Rights." (citation omitted)

---

[1]      A copy of the Decision in *Pakdel* is attached to this letter.

In a footnote that is particularly relevant herein, the Supreme Court stated:

> "The Ninth Circuit rejected several of petitioners' alternative theories on the merits. See *e.g.* 952 F.3d 1157, 1162, n.4 (2020)(considering whether 'the Lifetime Lease Requirement effects an exaction, a physical taking [or] a private taking"). On remand, the Ninth Circuit may give further consideration to these claims in light of our recent decision in *Cedar Point Nursery v. Hassid, ante,* p____."

The parallels between *Pakdel* and the case at bar before your Honor are remarkable. At a minimum, as we have pointed out previously, the Housing Stability and Tenant Protection Act (HSTPA) makes rent regulation permanent (by making the legislation permanent); virtually forbids eviction and makes permanent HSTPA's requirement of lease renewals every year or two without the former ability of opting out of the ETPA through high rent / high income / vacancy decontrol; substantially limits the ability of a landlord to secure housing for its own use of more than one apartment and only with immediate and compelling necessity, with further limitation as to the eviction of a senior tenant with 15 years occupancy; the inability to have 'eviction' conversions and the increasing of the requirements for non-eviction conversions rendering it virtually impossible to do so; the lack of exit from rent regulated housing – all substantially similar to the life-time lease required in *Pakdel*.[2] In *Pakdel* there was only one inhibiting factor and with the HSTPA there are many.

Without going into further detail, it is respectfully submitted that the Supreme Court has now opined twice in the last months in cases where property owners challenged state restrictions limiting the full use and occupation of a person's own property. The Court found in both cases in favor of the property owners and against the governmental restriction(s). The applicability to the HSTPA is obvious.

Therefore, we again submit that the State and CVH's motions to dismiss should be denied for the reasons set forth herein as well as those previously set forth in our Brief.

Very truly yours,

Kenneth J. Finger

kjf/lm
cc: Via ECF to all counsel of record

---

[2] See *Palazzolo v. Rhode Island, supra, Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528 (2005), where the court referred *to Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43S.Ct.458 (1922) in which Justice Holmes opined that "while property may be regulated to a certain extent, if a regulation goes too far it will be recognized as a taking." *Id.,* at 415, 43 S.Ct. 158 (emphasis added). This is the precisely the situation in the matter before this court.

Cite as: 594 U. S. ____ (2021)          1

Per Curiam

# SUPREME COURT OF THE UNITED STATES

## PEYMAN PAKDEL, ET UX. *v.* CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA, ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 20–1212.   Decided June 28, 2021

PER CURIAM.

When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a "final" decision. *Suitum* v. *Tahoe Regional Planning Agency*, 520 U. S. 725, 737 (1997). After all, until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation. *See id.,* at 734; *Horne* v. *Department of Agriculture*, 569 U. S. 513, 525 (2013). In the decision below, however, the Ninth Circuit required petitioners to show not only that the San Francisco Department of Public Works had firmly rejected their request for a property-law exemption (which they did show), but *also* that they had complied with the agency's administrative procedures for seeking relief. Because the latter requirement is at odds with "the settled rule . . . that exhaustion of state remedies is *not* a prerequisite to an action under 42 U. S. C. §1983," *Knick* v. *Township of Scott*, 588 U. S. ___, ___ (2019) (slip op., at 2) (brackets and internal quotation marks omitted), we vacate and remand.

## I

Petitioners are a married couple who partially own a multiunit residential building in San Francisco. When petitioners purchased their interest in the property, the building was organized as a tenancy-in-common. Under that kind of arrangement, all owners technically have the right to pos-

sess and use the entire property, but in practice often contract among themselves to divide the premises into individual residences. Owners also frequently seek to convert tenancy-in-common interests into modern condominium-style arrangements, which allow individual ownership of certain parts of the building. When petitioners purchased their interest in the property, for example, they signed a contract with the other owners to take all available steps to pursue such a conversion.

Until 2013, the odds of conversion were slim because San Francisco employed a lottery system that accepted only 200 applications per year. When that approach resulted in a predictable backlog, however, the city adopted a new program that allowed owners to seek conversion subject to a filing fee and several conditions. One of these was that non-occupant owners who rented out their units had to offer their tenants a lifetime lease.

Although petitioners had a renter living in their unit, they and their co-owners sought conversion. As part of the process, they agreed that they would offer a lifetime lease to their tenant. The city then approved the conversion. But, a few months later, petitioners requested that the city either excuse them from executing the lifetime lease or compensate them for the lease. The city refused both requests, informing petitioners that "failure to execute the lifetime lease violated the [program] and could result in an enforcement action." Brief for Respondents 9.

Petitioners sued in federal court under §1983. Among other things, they alleged that the lifetime-lease requirement was an unconstitutional regulatory taking. But the District Court rejected this claim without reaching the merits. 2017 WL 6403074, *2–*4 (ND Cal, Nov. 20, 2017). Instead, it relied on this Court's since-disavowed prudential rule that certain takings actions are not "ripe" for federal resolution until the plaintiff "seek[s] compensation through

Per Curiam

the procedures the State has provided for doing so." *Williamson County Regional Planning Comm'n* v. *Hamilton Bank of Johnson City*, 473 U. S. 172, 194 (1985). Because petitioners had not first brought "a state court inverse condemnation proceeding," the District Court dismissed their claims. 2017 WL 6403074, *4.

While petitioners' appeal was pending before the Ninth Circuit, this Court repudiated *Williamson County*'s requirement that a plaintiff must seek compensation in state court. See *Knick*, 588 U. S., at ___–___ (slip op., at 19–23). We explained that "[t]he Fifth Amendment right to full compensation arises at the time of the taking" and that "[t]he availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim." *Id.*, at ___–___ (slip op., at 7–8). Any other approach, we reasoned, would conflict with '[t]he general rule . . . that plaintiffs may bring constitutional claims under §1983 without first bringing any sort of state lawsuit." *Id.*, at ___ (slip op., at 11) (internal quotation marks omitted).

Rather than remand petitioners' claims in light of *Knick*, a divided panel of the Ninth Circuit simply affirmed. Noting that *Knick* left untouched *Williamson County*'s alternative holding that plaintiffs may challenge only "final" government decisions, *Knick*, 588 U. S., at ___ (slip op., at 5), the panel concluded that petitioners' regulatory "takings claim remain[ed] unripe because they never obtained a final decision regarding the application of the Lifetime Lease Requirement to their Unit." 952 F. 3d 1157, 1163 (2020).* Although the city had twice denied their

---

*The Ninth Circuit rejected several of petitioners' alternative theories on the merits. See, *e.g.,* 952 F. 3d 1157, 1162, n. 4 (2020) (considering whether "the Lifetime Lease Requirement effects an exaction, a physical taking, [or] a private taking"). On remand, the Ninth Circuit may give further consideration to these claims in light of our recent decision in *Cedar Point Nursery* v. *Hassid, ante,* p. ___.

requests for the exemption—and in fact the "relevant
agency c[ould] no longer grant" relief—the panel reasoned
that this decision was not truly "final" because petitioners
had made a belated request for an exemption at the end of
the administrative process instead of timely seeking one
"through the prescribed procedures." *Id.*, at 1166–1167 (ex-
plaining that petitioners waited "six months after [they]
had obtained final approval of their conversion . . . and
seven months after they had committed to offering a life-
time lease"). In other words, a conclusive decision is not
really "final" if the plaintiff did not give the agency the "op-
portunity to exercise its 'flexibility or discretion'" in reach-
ing the decision. *Id.*, at 1167–1168.

Judge Bea dissented, explaining that the "'finality'" re-
quirement looks only to whether "'the initial decisionmaker
has arrived at a definitive position on the issue.'" *Id.*, at
1170. In his view, an additional demand that plaintiffs
"follo[w] the decisionmaker's administrative procedures"
would "ris[k] 'establish[ing] an exhaustion requirement for
§1983 takings claims,' something the law does not allow."
*Ibid.* And when the Ninth Circuit declined to rehear the
case en banc, Judge Collins dissented along the same lines.
He expressed concern that "the panel's unprecedented deci-
sion sharply depart[ed] from settled law and directly
contravene[d] . . . *Knick*" by "impos[ing] an impermissible
exhaustion requirement." 977 F. 3d 928, 929, 934 (2020).

## II

We, too, think that the Ninth Circuit's view of finality is
incorrect. The finality requirement is relatively modest.
All a plaintiff must show is that "there [is] no question . . .
about how the 'regulations at issue apply to the particular
land in question.'" *Suitum*, 520 U. S., at 739 (brackets
omitted).

In this case, there is no question about the city's position:

Per Curiam

Petitioners must "execute the lifetime lease" or face an "enforcement action." Brief for Respondents 9. And there is no question that the government's "definitive position on the issue [has] inflict[ed] an actual, concrete injury" of requiring petitioners to choose between surrendering possession of their property or facing the wrath of the government. *Williamson County*, 473 U. S., at 193.

The rationales for the finality requirement underscore that nothing more than *de facto* finality is necessary. This requirement ensures that a plaintiff has actually "been injured by the Government's action" and is not prematurely suing over a hypothetical harm. *Horne*, 569 U. S., at 525. Along the same lines, because a plaintiff who asserts a regulatory taking must prove that the government "regulation has gone 'too far,'" the court must first "kno[w] how far the regulation goes." *MacDonald, Sommer & Frates* v. *Yolo County*, 477 U. S. 340, 348 (1986). Once the government is committed to a position, however, these potential ambiguities evaporate and the dispute is ripe for judicial resolution.

The Ninth Circuit's contrary approach—that a conclusive decision is not "final" unless the plaintiff *also* complied with administrative processes in obtaining that decision—is inconsistent with the ordinary operation of civil-rights suits. Petitioners brought their takings claim under §1983, which "guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials.'" *Knick*, 588 U. S., at ___ (slip op., at 2). That guarantee includes "the settled rule" that "exhaustion of state remedies is *not* a prerequisite to an action under . . . §1983." *Ibid.* (internal quotation marks omitted). In fact, one of the reasons *Knick* gave for rejecting *Williamson County*'s state-compensation requirement is that this rule had "effectively established an exhaustion requirement for §1983 takings claims." *Knick*, 588 U. S., at ___ (slip op., at 12).

The Ninth Circuit's demand that a plaintiff seek "an exemption through the prescribed [state] procedures," 952

F. 3d, at 1167, plainly requires exhaustion. In fact, this rule mirrors our administrative-exhaustion doctrine, which "provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford* v. *Ngo*, 548 U. S. 81, 88–89 (2006) (internal quotation marks omitted). As we have often explained, this doctrine requires "*proper exhaustion*"—that is, "compliance with an agency's deadlines and other critical procedural rules." *Id.,* at 90 (emphasis added). Otherwise, parties who would "prefer to proceed directly to federal court" might fail to raise their grievances in a timely fashion and thus deprive "the agency [of] a fair and full opportunity to adjudicate their claims." *Id.,* at 89–90. Or, in the words of the Ninth Circuit below, parties might "make an end run . . . by sitting on their hands until every applicable deadline has expired before lodging a token exemption request that they know the relevant agency can no longer grant." 952 F. 3d, at 1166.

Whatever policy virtues this doctrine might have, administrative "exhaustion of state remedies" is not a prerequisite for a takings claim when the government has reached a conclusive position. *Knick*, 588 U. S., at ___ (slip op., at 2). To be sure, we have indicated that a plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision. See, *e.g., Williamson County*, 473 U. S., at 192–194 ("The Commission's refusal to approve the preliminary plat . . . leaves open the possibility that [the plaintiff] may develop the subdivision according to the plat after obtaining the variances"); *Knick*, 588 U. S., at ___ (slip op., at 5) ("[T]he developer [in *Williamson County*] still had an opportunity to seek a variance from the appeals board"); cf. *Palazzolo* v. *Rhode Island*, 533 U. S. 606, 624–625 (2001) (dismissing accusations that the plaintiff was "employing a hide the ball strategy" when "submission of

Per Curiam

[a] proposal would not have clarified the extent of development permitted . . . , which is the inquiry required under our ripeness decisions"). But, contrary to the Ninth Circuit's view, administrative missteps do not defeat ripeness once the government has adopted its final position. See *Williamson County*, 473 U. S., at 192–193 (distinguishing its "finality requirement" from traditional administrative "exhaust[ion]"). It may very well be, as Judge Bea observed, that misconduct during the administrative process is relevant to "evaluating the *merits* of the . . . clai[m]" or the measure of damages. 952 F. 3d, at 1179, n. 2 (dissenting opinion); cf. *Palazzolo*, 533 U. S., at 625. For the limited purpose of ripeness, however, ordinary finality is sufficient.

Of course, Congress always has the option of imposing a strict administrative-exhaustion requirement—just as it has done for certain civil-rights claims filed by prisoners. See 42 U. S. C. §1997e(a); *Ngo*, 548 U. S., at 84–85 ("Before 1980, prisoners asserting constitutional claims had no obligation to exhaust administrative remedies"). But it has not done so for takings plaintiffs. Given that the Fifth Amendment enjoys "full-fledged constitutional status," the Ninth Circuit had no basis to relegate petitioners' claim "'to the status of a poor relation' among the provisions of the Bill of Rights." *Knick*, 588 U. S., at ___ (slip op., at 6).

\*          \*          \*

For the foregoing reasons, we grant the petition for a writ of certiorari, vacate the judgment of the Ninth Circuit, and remand the case for proceedings consistent with this opinion.

*It is so ordered.*